## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is made and entered into by and between (a) Brian Hefner ("Hefner") and (b) Flat-Out Incorporated ("Flat-Out"), William H. Starkey, and Amy Diane Starkey (collectively "Defendants"). This Agreement is made in compromise of disputed claims, including claims under the Fair Labor Standards Act ("FLSA"), the Indiana Minimum Wage Law, and the Indiana Wage Payment Statute. This Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below) upon the terms and conditions set forth below.

The "Effective Date" shall be the date on which the Court approves the Settlement (as defined below).

1. **Court Approval.** Because the Lawsuit involves a claim under the FLSA, the parties are seeking the Court's approval of the Agreement and will file a motion for approval with the Court within three business days after the date on which this Agreement has been fully executed by the parties. As used in this Agreement, the term "Lawsuit" refers to the litigation captioned *Hefner v. Flat-Out Incorporated et al.,* Case No. 1:20-cv-02478-JPH-MJD, brought in the Southern District of Indiana.

2. **Settlement Payment.** Within 14 days following the Effective Date, Flat-Out shall pay Hefner the total sum of $24,000.00 ("Settlement Payment"). The Settlement Payment shall be paid as follows:

    a. Flat-Out shall pay Hefner $16,451.56 for alleged lost wages. This will be a re-print of a payroll check that was previously issued on July 31, 2020. Flat-Out shall report this payment on a Form W-2 issued to Hefner.

    b. Flat-Out shall pay Hefner's legal counsel, Christopher Wolcott, The Wolcott Law Firm, LLC, $7,548.44 for alleged attorneys' fees and costs. Flat-Out shall report this payment on a Form 1099 issued to Hefner and his legal counsel.

3. **Taxes and Withholdings.** Hefner shall be solely responsible for any federal, state, and local taxes incurred as a result of any aspect of the Settlement Payment, and shall indemnify and hold Defendants harmless from any costs, liability, or expenses, including reasonable attorneys' fees, arising from the taxation, if any, of the Settlement Payment, including without limitation any penalties or administrative expenses. In addition, the tax treatment of any portion of the Settlement Payment shall not impact the enforceability of this Agreement.

4. **Release by Hefner.** Hefner hereby releases and forever discharges Defendants, and all of their respective, as applicable, parents, subsidiaries, divisions, related companies, affiliates, predecessors, successors, and assigns, and all of their respective, as applicable, present and former officers, directors, shareholders, agents, independent contractors, employees, representatives, and attorneys, in their representative as well as their individual capacities, from any and all claims, demands, damages, costs, expenses, and causes of action of any kind or nature, whether known or unknown, including without limitation any claims alleging violation or

Exhibit A

breach of any federal, state, or local statute, regulation, ordinance, or common law, and/or breach of any contract. Hefner's release of claims includes specifically, without limitation, the following: (a) any claims under any state statutory or decisional law pertaining to wrongful discharge, discrimination, retaliation, breach of contract, breach of public policy, misrepresentation, fraud, or defamation, (b) any and all claims under the Indiana Civil Rights Act, the Indiana Wage Payment Statute, the Indiana Wage Claims Statute, Title VII of the Civil Rights Act of 1964, the Employee Retirement Income Security Act, the Fair Labor Standards Act, the Family and Medical Leave Act, and the Americans With Disabilities Act Amendments Act, (c) any claims alleged in or that could have been alleged in the Lawsuit, (d) any claims that Hefner has or may have on account of or arising out of or in any way related to (i) his employment with Flat-Out, (ii) the separation of his employment with Flat-Out, and/or (iii) any and all matters, transactions, or things occurring prior to his execution of this Agreement. Hefner specifically acknowledges and agrees that the release in this section is a general release of all claims and rights without regard to whether those claims and rights relate to or arise from Hefner's employment with Flat-Out.

5. <u>Dismissal of Lawsuit</u>. Within seven days following the Effective Date, Hefner shall file a stipulation of dismissal causing the Lawsuit to be dismissed, with prejudice, with each party to bear its, his, or her own costs and attorneys' fees.

6. <u>Additional Acknowledgments, Covenants, and Agreements by Hefner</u>. Hefner further acknowledges, covenants, and agrees that:

   a. He has received all compensation and benefits he was or will be entitled to by virtue of his employment with Flat-Out, except for the Settlement Payment;

   b. He shall not apply for or seek future employment with Flat-Out, or any of its, as applicable, parents, subsidiaries, divisions, related companies, affiliates, predecessors, successors, or assigns;

   c. He has been encouraged to seek legal counsel before signing this Agreement;

   d. In executing this Agreement, he does not rely upon and has not relied upon any representation or statement with regard to the subject matter, basis, or effect of this Agreement, other than those specifically stated in this Agreement;

   e. He has returned or will immediately return to Flat-Out all keys, files, records, documents, information, data, equipment, lists, computer programs and/or data, property, materials, or other items relating in any way to the business and/or operations of Flat-Out;

   f. He shall not engage in any communication (oral, written, electronic, through any form of media, or otherwise) that, expressly or impliedly, attacks, degrades, criticizes, discredits or in any way impugns the personal or professional integrity, reputation or business practices of Flat-Out, William Starkey, or Amy Diane Starkey, or

any of their respective, as applicable, parents, subsidiaries, divisions, related companies, affiliates, predecessors, successors, and assigns, and all of their respective, as applicable, present and former officers, directors, shareholders, agents, independent contractors, employees, representatives, and attorneys, in their representative as well as their individual capacities;

      g.    He has read and understands this Agreement and executes it voluntarily and of his own free will; and

      h.    His execution of this Agreement is in consideration of something of value to which he would not otherwise be entitled.

7.    **No Admission on Part of Defendants**. It is understood and agreed by the parties that this Agreement does not constitute an admission by Defendants that they have violated any statute or law, committed any unlawful act or breached any contract. It is also understood and agreed by the parties that Defendants dispute the merits of Hefner's claims and this Agreement is entered into solely for the purpose of compromise in an effort to fully resolve all matters relating in any way to Hefner's employment with Flat-Out, the separation of Hefner's employment with Flat-out, and/or the Lawsuit.

8.    **Confidentiality**. The terms and conditions of this Agreement shall be kept confidential by Hefner. Except for purposes of seeking the Court's approval of the Agreement, Hefner and Hefner's agents, employees, representatives, attorneys, successors, and assigns shall not, directly or indirectly, disclose the existence or any terms or conditions of this Agreement to any person, firm, corporation, or entity other than Hefner's accountants, spouse, and attorneys, and except as may be allowed or required by law.

9.    **Non-Interference with EEOC Rights**. Nothing in this Agreement (including without limitation any release of claims, non-disparagement, or confidentiality provision) shall prohibit or restrict Hefner from filing a charge or complaint with, communicating with, or participating in any investigation by, the Equal Employment Opportunity Commission, or any similar state or local administrative agency. Hefner acknowledges and agrees, however, that in the event he files such a charge or complaint, he waives any right to recover any monetary damages or any other individual relief.

10.    **Miscellaneous Terms and Conditions**.

      a.    This Agreement sets forth the entire agreement between the parties with respect to the subject matter of this Agreement and fully supersedes all prior negotiations, representations and agreements, whether written or oral, between the parties with respect to the subject matter of this Agreement.

      b.    The terms and conditions of this Agreement shall extend to, be binding upon and inure to the benefit of the heirs, administrators, representatives, executors, successors, and assigns of the parties.

28192210v1

   c. This Agreement shall be construed in accordance with and pursuant to the internal laws of the state of Indiana, without regard to choice of law rules, and the parties (i) agree that litigation initiated by any party concerning the interpretation or implementation of this Agreement shall exclusively be brought and litigated in a state court of competent jurisdiction in Marion County, Indiana or in federal court of competent jurisdiction in the Southern District of Indiana; (ii) consent to the personal jurisdiction of such courts; and (iii) waive any defense of forum non conveniens.

   d. If any term or condition of this Agreement is applied to any party or to any circumstance that is adjudged to be illegal, invalid, or inoperable, that illegality, invalidity, or inoperability shall not affect the remainder of the Agreement, its validity or enforceability.

   e. Each party has had an ample opportunity to make suggestions or changes to the terms and conditions in this Agreement. The terms and conditions of all parts of this Agreement shall in all cases be construed as a whole, according to their fair meaning, and not strictly for or against any drafter.

   f. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

  IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly and properly executed.

[*Signature Page Follows*]

28192210v1

*READ CAREFULLY BEFORE SIGNING*

**Flat-Out Incorporated**

_____
Signature

_____
Printed Name and Title

Date:_____

**William H. Starkey**

_____
Signature

Date:_____

**Amy Diane Starkey**

_____
Signature

Date: _____

**Brian Hefner**

_____[signature]_____
Signature

Date: __Nov 13, 2020_____

5

28192210v1

## *READ CAREFULLY BEFORE SIGNING*

**Flat-Out Incorporated**

_____
Signature

Amy Starkey    Vice President    Date: 11-18-20
Printed Name and Title

Date: 11-18-20

**William H. Starkey**

_____
Signature

Date: 11-18-20

**Amy Diane Starkey**

_____
Signature

Date: 11-18-20

**Brian Hefner**

_____
Signature

Date: _____